**CONSUMER ATTORNEYS**
Beth K. Findsen, AZ No. 023205
8245 N. 85th Way,
Scottsdale, AZ 85258
T: (602)807-6676
F: (718) 715-1750
E: bfindsen@consumerattorneys.com

David A. Chami, AZ No. 027585
8245 N. 85th Way,
Scottsdale, AZ 85258
E: dchami@consumerattorneys.com
T: 480-626-2359
F: 718-715-1750

Daniel Cohen, AZ No. 032552
8245 N. 85th Way,
Scottsdale, AZ 85258
E: dcohen@consumerattorneys.com
T: 718-770-7940
F: 718-715-1750

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA
### PHOENIX DIVISION

| | |
|---|---|
| Victoria Nicole Ladner, | **Case No.:** |
| Plaintiff, | **COMPLAINT AND DEMAND FOR** |
| v. | **JURY TRIAL** |
| RentGrow, Inc., and TransUnion Rental Screening Solutions, Inc., | **1. FCRA, 15 U.S.C. § 1681 *et seq.*** |
| Defendant. | |

1

**COMPLAINT**

Victoria Nicole Ladner ("Plaintiff" or "Ms. Ladner") by and through her counsel brings the following Complaint against Defendant RentGrow, Inc. ("RentGrow"), and TransUnion Rental Screening Solutions, Inc. ("TURSS")(collectively "Defendants") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report that Defendant published to Plaintiff's potential landlord, which inaccurately stated that Plaintiff had a civil judgment for eviction against her when the judgment had been expressly vacated, dismissed and the record sealed and prohibited from distribution to third parties or the public pursuant to state law designed to protect parties from just such disclosures.

**INTRODUCTION**

1.    This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.    Defendant RentGrow is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). RentGrow assembles and merges information contained in the database of another consumer reporting agency and maintains a database of the assembled or merged information from which new consumer reports are produced. RentGrow is registered to do business in the State of Florida, maintains its principal place of business at 307 Waverly Oaks Road, Suite 301, Waltham, MA 02452, regularly conducts business in this judicial district, and can be served with process by way of its registered agent, Corporation Service Company, located at 84 State Street, Boston, MA 02109.

3.    Defendant TURSS is a "consumer reporting agency" as that term is defined under 15 U.S.C. § 1681a(f). TURSS is registered to do business in the State of Florida, regularly conducts business in this judicial district, maintains its principal place of business located at 555 W. Adams, Chicago, IL 60661, and can be served with process by

2

way of its registered agent Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

4.     Defendants are each a consumer reporting agency ("CRA") that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these tenant screening reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

5.     Defendants assembled and published an inaccurate tenant screening report to Plaintiff's prospective landlord, which included a sealed court record which is prohibited from being reported publicly, via Ariz. Rev. Stat. §33-1379's express language, and because the civil judgment was vacated, dismissed, and sealed per the court's order, resulting in the online court record stating [t]his case is sealed" in contrast to Defendants' report.

6.     In fact, Plaintiff had no civil eviction judgment against her. The civil judgment listed in the report had been vacated, dismissed and the record sealed pursuant to Arizona statute.

7.     Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the tenant screening report from Defendant, in which Defendant published the inaccurate civil judgment.

8.     Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available underlying public court records from Maricopa County, Arizona justice court regarding the civil judgment prior to publishing the information to Plaintiff's prospective landlord.

9.     Had Defendant performed even a cursory review of the underlying public court records, it would have discovered that Plaintiff had no civil judgment, and that the judgment had been vacated, dismissed, and the record sealed.

10.     Arizona law specifies that such a dismissal be sealed and not reported or released to anybody except the party, the court, and the clerk:

A. In any action for eviction pursuant to section 33-1368 or 33-1377 or pursuant to a forcible entry and detainer action, on the court entering an order that dismisses the action for eviction prior to entry of a judgment or that enters judgment in favor of the tenant, **the court shall issue an order sealing all records related to the case.**

B. The court **shall also order the sealing of an eviction case** on the filing of a written stipulation by the landlord and the tenant to set aside the order of eviction and seal the eviction case court file.

C. **If the records in an eviction case court file are sealed, the tenant's case records shall only be made available to the following:**

1. The person whose records are sealed and any party or any attorney who has made an appearance in the case where records are sealed.

2. The court, **except that the tenant's sealed eviction case may not be sold or released as a part of a bulk or individual records transfer to a third party**.

3. The clerk of the court or any department that is responsible for maintaining records, except that **the tenant's sealed eviction case may not be sold or released as a part of a bulk or individual records transfer to a third party**.

Ariz. Rev. Stat. §33-1379 (emphasis added).

11.    Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

12.    Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

13.    RentGrow and TURSS (collectively, "Defendants") have reported inaccurate information concerning Plaintiff's credit and background history, namely, that Plaintiff had been previously evicted from a rental property.

14.    Upon information and belief, RentGrow receives partial consumer credit information from TURSS and then RentGrow automatically aggregates and stores that

4

information in its database without review or procedure. Neither RentGrow nor TURSS confirms or verifies the information unless a consumer submits a dispute as to the accuracy of the information, and even then, a complete investigation may not be performed.

15.    Although Plaintiff submitted disputes to both RentGrow and TURSS demanding the correction of the reporting, RentGrow and TURSS failed to properly complete an investigation and/or correct the disputed information and continued to report the disputed information in a misleading manner to third parties.

16.    As discussed below, Defendants' actions have harmed and continue to harm Plaintiff.

17.    Defendants' inaccurate report cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of her needs, causing her physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

18.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

19.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information Plaintiff disputed – the **eviction judgment** – was inaccurate and should be corrected in the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i.

**PARTIES**

20.    Victoria Nicole Ladner ("Plaintiff" or "Ms. Ladner") is a natural person residing in Tempe, Arizona, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

21.    Defendant RentGrow is registered to do business in the State of Arizona, maintains its principal place of business at 307 Waverly Oaks Road, Suite 301, Waltham, MA 02452, regularly conducts business in this judicial district, and can be served with process by way of its registered agent, Corporation Service Company, located at 211 E. 7th Street, Suite 620, Austin, TX 78701.

22.    Defendant TURSS is registered to do business in the State of Arizona, regularly conducts business in this judicial district, maintains its principal place of business located at 555 W. Adams, Chicago, IL 60661, and can be served with process by way of its registered agent Prentice Hall Corporation, located at 801 Adlai Stevenson Drive, Springfield, IL 62703.

23.    Among other things, Defendants sell consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

24.    Defendants are each a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

25.    This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

26.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

27.    Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

28.    While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

29.    Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

30.    Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

31.    Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening reports like the one Defendant prepared in Plaintiff's name.

32.    The FCRA provides a number of protections for housing applicants who are the subject of tenant screening reports for the purpose of securing housing and credit.

33.    In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of tenant screening reports, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

34.    The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

35.    Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

36.    Defendant disregarded its duties under the FCRA with respect to Plaintiff's tenant screening report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

37.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including civil judgments, including sealed and expunged records, criminal records, and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

38.    Tenant Screening Reports are generally created by running automated searches through giant databases of aggregated civil and criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating tenant screening reports.

39.    Tenant Screening companies, like Defendants, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

40.     Given that Defendants are in the business of selling tenant screening reports, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

41.     Defendants place their business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendants to produce reports containing information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendant's customers.

42.     Defendants report such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

43.     Defendants charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

44.     Appropriate quality control review of Plaintiff's report would have made clear that Defendants were reporting a civil judgment that had been vacated, dismissed, and sealed.

45.     As providers of tenant screening reports, Defendants should be aware of the FCRA requirements and is likely a member of the Professional Background Screening Association ("PBSA").  PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## **FACTS**

### **Plaintiff Applies for an Apartment with the Laurel Apartments**

46.     Plaintiff's former lease ended on March 10, 2023. She was having trouble finding somewhere for she and her three children to move. She needed a two-bedroom (at least) with no downstairs neighbors (so her youngest son could run around without disrupting neighbors), within her budget and close to the kids' school/activities. Since

March 10th, Plaintiff and her three children (13, 9, and 5 years old) were staying at her mother's house and sharing a bedroom. They would have to leave periodically and visit friends to avoid disrupting her mother's work or getting in her way. Plaintiff was paying her mother $400/month to stay there and $100/month to rent a garage to store their belongings between moves.

47.    On March 24, 2023, Plaintiff applied for a desired lease at the Laurel Apartments. Plaintiff was excited to find the unit at the Laurel because it was the cheapest luxury apartment she had seen after searching for a safe, affordable, and suitable apartment for Plaintiff and her children. It was a two bedroom/two bath with no carpet, on the second floor above a garage (no downstairs neighbors). Even more important, the apartment was close to her kids' school and activities. As far as she was concerned, the Laurel was a perfect rental for them.

48.    Plaintiff paid $308.45 for the application fee. She was later able to obtain a partial refund of $253.75.

**The Laurel Apartments Orders a Report from RentGrow**

49.    On or about March 24, 2023, the Laurel Apartments ordered a tenant screening report on Plaintiff from Defendant RentGrow and TURSS.

50.    On March 24, 2023, Defendant sold a tenant screening report about Plaintiff to the Laurel Apartments, wherein Defendant published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

51.    The tenant screening report, identified as Screening Report by Defendant, is a consumer report regulated by the FCRA.

52.    Within that tenant screening report, Defendant published inaccurate information about Plaintiff.

53.    Specifically, Defendant's tenant screening report about Plaintiff included an inaccurate civil judgment for eviction from Maricopa County, Arizona, which appeared in the tenant screening report as follows:

1

2

PREMIUM NATIONAL CIVIL COURT RECORDS SEARCH

| REQUEST DATE | COMPLETED | STATUS |
|---|---|---|
| 03/24/2023 2:57 PM | 03/24/2023 2:57 PM | Does Not Meet Property Requirements |
| | | Civil Court Records Found |

**Court:** KYRENE JUSTICE COURT - WEST
**Case #:** CC202216010
**Originating Court Department:** CV
**Plaintiff:** GALLERIA PALMS FEE OWNER LLC
**Address:** 1600 W LA JOLLA DR #2100, TEMPE AZ 85282
**Defendant:** LADNER, VICTORIA
**Action Type:** CIVIL JUDGMENT
**Filing Type:** CIVIL JUDGMENT
**Filing Date:** 09/22/2022
**Amount:** 2,497.00

54.     The civil judgment reported by Defendants about Plaintiff is inaccurate.

55.     The civil judgment listed had been vacated, dismissed and the record sealed. As a sealed record that had been vacated and dismissed, Arizona law prohibits the reporting of such a judgment. A.R.S. §33-1379

56.     A cursory review of the widely available underlying public court records confirms that the judgment was sealed because it had been vacated and dismissed.

57.     Rather, the public record confirms that the record was sealed.

58.     The sole reason the inaccurate civil judgment was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the tenant screening report it sold about Plaintiff to Plaintiff's prospective landlord.

59.     Had Defendants followed reasonable procedures, they would have discovered that Plaintiff has no civil judgment against her and that they should not have reported the same.

60.     In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Plaintiff is Denied by the Laurel Apartments**

61.    On or about March 24, 2023, Plaintiff was very upset and confused to receive a denial from the Laurel Apartments.  A letter of that date stated that Plaintiff was denied because "Civil Court History Does Not Meet Property Requirements."

62.    Shortly thereafter, Plaintiff obtained a copy of the tenant screening report and was shocked and humiliated upon reviewing the civil judgment notation contained within the tenant screening report.

63.    Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that she had a civil judgment against her by a prior landlord, both in relation to the Laurel Apartments apartment, but also the impact of the same on her future ability to find suitable housing for her family and for other implications to her future.

64.    Plaintiff called her contact at the Laurel Apartments and explained that the information was wrong, that she did not have a civil judgment against her by a prior landlord. Plaintiff was told that if she could get the report corrected/prove the judgment record was wrong, she might be approved to move in.

65.    Plaintiff went down to the courthouse to get the public records. She confirmed the case was dismissed and sealed.

66.    Plaintiff provided the court documents to the manager of the Laurel Apartments, Giovanni, who agreed to submit it to the "override department."  However, the Laurel Apartments still did not change its mind at that point, and on the basis of the inaccurate report, still denied Plaintiff.

67.    At one point, Plaintiff also contacted Galleria Palms (the source of the underlying civil record/judgment), to confirm that everything on their end was dismissed and sealed. Galleria Palms said it confirmed with their attorneys that no judgment or civil court record should still be appearing on PC's consumer reports.

**Plaintiff Disputed the Misinformation in Defendants'
Tenant Screening Report**

68.     On or about March 27, 2023, desperate to secure housing with the Laurel Apartments and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant Rentgrow via RentGrow's online dispute form, attaching the court documents showing the dismissal and a photocopy of her identification. Upon information and belief, RentGrow then forwarded PC's dispute to TURSS.

69.     Plaintiff identified herself and provided information to Defendant to support her dispute.

70.     Plaintiff specifically disputed the inaccurate report of a civil judgment that had been vacated, dismissed and the record sealed.

71.     Plaintiff specifically asked Defendant to investigate and correct its reporting in any tenant screening report about Plaintiff.

**Defendants failed to Conduct a Reasonable Reinvestigation and Correct the Tenant
Screening Report Completely**

72.     On or about April 6, 2023, Plaintiff received Defendant TURSS' correspondence confirming that it had reinvestigated Plaintiff's dispute and that it would update the information only in part and reflect the case to show as a "Civil Dismissal with the Release Date as 09/27/2022."   It is still inaccurate to show a civil judgment at all where the judgment was vacated and dismissed and the record sealed. A.R.S. §13-1128.

73.     On or about April 11, 2023, Plaintiff received an email from Defendant RentGrow providing an updated report and stating that it had submitted Plaintiff's dispute to the agency that provided the disputed information, Defendant TURSS.

74.     Again, the report was only partially corrected to show that the judgment was "dismissed" rather than accurately removing all reporting of a civil judgment that had been vacated and the record sealed. A.R.S. §13-1128.

75.     Upon information and belief, Defendants submitted this partially corrected report to the Laurel Apartments.

76.     Defendants failed to issue a completely corrected tenant screening report to Laurel Apartments.

77.     Despite Plaintiff's dispute, Defendant failed to conduct a reasonable reinvestigation of Plaintiff's dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

78.     Finally, on April 11, 2023, Plaintiff received word that she was approved to live at The Laurel. However, the unit she wanted was no longer available. The unit she ultimately was forced to accept as the only option was approximately $300-$400 more per month in rent. The replacement unit was on the second floor, but not above a garage so Plaintiff still has her concern about receiving complaints from her downstairs neighbors regarding her kids running around or making normal noise.

79.     Plaintiff had not anticipated getting approved for the Laurel, and had been looking elsewhere for a few weeks, resigned to the fact that she and her kids would have to stay with her mom even longer.

80.     By the time the dispute process was resolved, her report still only partially corrected, and it was determined that Plaintiff could move into the Laurel after all, she did not have enough money on hand to afford the security deposit and other move-in costs. Consequently, Plaintiff could not move into the Laurel until April 29, 2023.

81.     Due to Defendant's unreasonable procedures and shoddy, if any, dispute reinvestigation, and despite Plaintiff's continued efforts to seek housing, Plaintiff was forced to stay at her mother's house, in a single bedroom with three kids, from March 10, 2023, until April 29, 2023, more than a month.

82.     But for Defendant's inaccurate tenant screening report, Plaintiff's housing application would have been approved in the first place, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendant's erroneous reporting.

83.     Defendant's false report cost Plaintiff a housing opportunity that met her needs, including that attendant to affordability, safety, and proximity to work, friends, and family.

84.     The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

85.     As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

### CLAIMS FOR RELIEF
### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

86.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

87.     Defendants RentGrow and TURSS are each a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

88.     At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

89.     At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

90.     Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the tenant screening report they sold about Plaintiff as well as the information it published within the same.

91.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

92.    Defendants willfully violated 15 U.S.C. § 1681e(b) in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

93.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation

94.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

95.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  See 15 U.S.C. § 1681i(a)(1). The Act imposed a 30-day time limit for the completion of such an investigation. *Id*.

96.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

97.    On at least one occasion during 2023, Plaintiff disputed the inaccurate information with Defendants and requested that Defendants correct and/or delete the inaccurate information in the tenant screening report that was patently inaccurate, misleading, and highly damaging to her, attributing a prior landlord's supposed civil judgment to Plaintiff.

98.    In response to Plaintiff's dispute, Defendants failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the tenant screening report and refused to correct the tenant screening report at issue.

99.    Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject tenant screening report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

100.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the tenant screening report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

101.    Defendants willfully violated 15 U.S.C. § 1681i in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

102.  Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

    i.    Determining that Defendants negligently and/or willfully violated the FCRA;

    ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

    iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

    iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

**DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

///

//

1    Respectfully submitted this 17th day of May 2023.

2                                    **CONSUMER ATTORNEYS**

3                                    */s/ Beth K. Findsen*
4                                    Beth K. Findsen, AZ #023205
                                     8245 N. 85th Way
5                                    Scottsdale, AZ 85258
                                     T: (602)807-6676
6                                    F: (718) 715-1750
7                                    E: bfindsen@consumerattorneys.com

8                                    David A. Chami, AZ No. 027585
9                                    8245 N. 85th Way,
                                     Scottsdale, AZ 85258
10                                   E: dchami@consumerattorneys.com
                                     T: 480-626-2359
11                                   F: 718-715-1750

12
                                     Daniel Cohen, AZ No. 032552
13                                   8245 N. 85th Way,
                                     Scottsdale, AZ 85258
14                                   E: dcohen@consumerattorneys.com
15                                   T: 718-770-7940
                                     F: 718-715-1750
16

17                                   *Attorneys for Plaintiff,*
                                     *Victoria N. Ladner*
18

19

20

21

22

23

24

25

26

27

28